IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

         Respondent/Plaintiff,

    Vs.                  Nos.  07-40078-01-SAC
                                        11-4057-SAC

ALONSO AYON CORRALES,

         Movant/Defendant.

MEMORANDUM AND ORDER

Following four days of evidence and arguments, the jury
returned a verdict finding the defendant Alonso Ayon Corrales guilty of count
one, conspiracy to possess with the intent to distribute 16.07 kilograms of
cocaine, and count two, possession with the intent to distribute 16.07
kilograms of cocaine.  Sentenced to a 120-month term of imprisonment, the
defendant appealed his conviction to the Tenth Circuit which affirmed his
conviction in a published decision, *United States v. Corrales*, 608 F.3d 654
(10th Cir. 2010).  Corrales timely filed an original motion for relief under 28
U.S.C. § 2255 (Dk. 132) and timely filed an amended motion (Dk. 155)
seeking the same relief on additional grounds.  Corrales also has renewed
his motion for appointment of counsel (Dk. 164) and asks for leave to
exceed the page limitation for reply briefs[1] (Dk. 165).

---

[1]Because the defendant's brief does not exceed the page limitation,
the court denies the motion as moot.

**RENEWED MOTION FOR APPOINTMENT OF COUNSEL (Dk. 164)**

In its order of August 31, 2011, the court denied Corrales's first motion for appointment of counsel. (Dk. 158). The court found:

> In light of the exhaustive trial record and the nature of the defendant's arguments, an evidentiary hearing appears unnecessary at this stage. Although a district court may appoint counsel when "the interests of justice so require," 18 U.S.C. § 3006A(a)(2)(B), the defendant's arguments here are not unusually complex either legally or factually, and the facts and circumstances surrounding them have been the matter of several rulings at trial and on appeal. Consequently, the appointment of counsel to further investigate these claims seems futile. The defendant's pro se pleadings certainly show him capable of articulating his claims, albeit in a somewhat rambling fashion.

*Id*. at 1-2 (footnote omitted). Instead of addressing any of the court's reasons for denying his earlier request, Corrales relies on what is boilerplate language appearing in the government's motion for extension of time--"the preparation of this motion involves review of several complicated legal issues." (Dk. 159, p. 1). The government's boilerplate also incorrectly refers to the document it was preparing as a motion rather than a response. Corrales's amended § 2255 motion and the government's response do not present complex legal or factual issues, the record is sufficient to address the additional issues, and Corrales does not present a sufficient ground for granting his renewed motion. It is denied.

**STATEMENT OF FACTS**

Corrales was a passenger in a car traveling east bound on I-70 when it was stopped for speeding and for having an expired license

registration.  Russell County Deputy Sheriff Schneider conducted the traffic stop and testified to several circumstances making him suspicious of illegal activity and causing him to seek consent to search the car for drugs.  The driver, Ana Villano, consented to the search, and Deputy Schneider eventually uncovered 41.5 pounds of cocaine secured in a hidden compartment in the dash.  Villano and Corrales were arrested and interviewed.  Corrales told officers that he did not know illegal drugs were stored in the car.

Corrales explained the purpose of his trip was a vacation from his home in Modesto, California, to Durham, North Carolina and then on to Atlanta, Georgia.  Because he did not trust his own car for this trip, Corrales said he had borrowed this car from a friend whom he had known for two years.  Corrales, however, could recall only the first name of his friend, Ricardo, and when the officers showed him paperwork from the car with the name of Ricardo Padilla on it, the defendant said he believed that was his friend's last name.

Corrales told officers that neither he nor Ms. Villano knew anyone in Durham, North Carolina.  Officers showed him an atlas from the car with two telephone numbers handwritten in it.  Corrales said that Padilla had written those numbers in the atlas and that Corrales was to call one of the numbers when they reached Durham.  Corrales did not know the name

of the person he would be calling, and his instructions were to tell the person that he had Ricky's car. Someone then would come for the car and return it sometime later while they waited in a hotel. Corrales admitted to the interviewing officers that this was a strange story.

Corrales described their travel plans after stopping in Durham were to drive to Atlanta and stay several days with a friend whose first name was Arturo and whose last name Corrales did not know. Corrales identified Arturo's name and address also as handwritten in the atlas by Padilla. When asked for details on how they took possession of Padilla's car, Corrales first told officers that he went to Padilla's home and picked it up there. But then when confronted with Villano's account of this, Corrales changed his story and said the car had been dropped off at his residence.

Corrales also consented to the search of his cell phone seized during the arrest. In his phone's directory, officers found numbers for the names of Ricardo, Heri and Arturo. The car's records showed that Heriberto Rodgriguez had owned this car before Padilla.

The co-defendant, Ricardo Padilla Aramburo, pled guilty to violating 18 U.S.C. § 1952(a)(3) by aiding and abetting interstate transportation in aid of racketeering activity, that is, a conspiracy to possess with intent to distribute cocaine. Padilla testified that Heriberto Rodriguez persuaded him to transport cocaine from Mexico by car to North Carolina.

On his second visit with Heriberto, Padilla was given the car in which the drugs were hidden. Rodriguez transferred title of the car to Padilla, and one month of automobile insurance was purchased for the car in Padilla's name.

Padilla testified that after he drove the car into the United States he panicked and was too afraid to continue the trip. He telephoned Rodriguez who tried to assure him to continue with the trip, but Padilla refused and said he just wanted to leave the car. Rodriguez told Padilla to wait, and he would call him back. A short time later, Rodriguez called Padilla with a telephone number. Padilla called the number and received directions for driving the car to a new location where he could leave it. So, Padilla drove to a gas station in Modesto, California, and called the number again. Padilla identified Corrales as the person who came to the gas station with directions for Padilla to drive the car to a residence and leave it under a carport. Corrales then gave Padilla a ride to his home in Yuba City. Padilla said he had never seen Corrales before that day and had not seen him since. He could not recall Corrales's name from that day's events. Padilla said he did not give Corrales an atlas and denied that the handwriting in the atlas was his.

The government on direct elicited from Padilla the circumstances of his 2007 conviction for transporting cocaine and methamphetamine hidden in a truck that he was driving. The drugs were discovered during a

border-crossing search.  Though he pleaded guilty to this offense in California, Padilla told the jury in Kansas that he did not know drugs were stored in this truck and that he entered a plea to reduce his possible sentence.  Padilla said that neither Rodriguez nor Padilla was involved in this 2007 incident.  Defense counsel cross-examined Padilla about the 2007 incident questioning him about the vehicle used and his reasons for pleading guilty to the offense.

## ISSUES FOR § 2255 RELIEF

Corrales first argues that his trial counsel ineffectively represented him by not investigating the discovery received from the government and, in particular, Padilla's 2007 conviction for transporting cocaine and the circumstances surrounding this criminal activity.  Corrales next "believe[s]" his trial counsel was ineffective in cross-examining Padilla in that he misinterpreted the trial court's ruling on the permissible scope of examination and also failed to seek the court's clarification of its ruling.  (Dk. 155, p. 6).  Finally, Corrales "believes" his counsel also was ineffective for not questioning Padilla about "the types of vehicles he had available at the time he loaned me [Corrales] his Honda Accord."  (Dk. 155, p. 8).

## GENERAL § 2255 STANDARDS

A district court may grant relief under § 2255 if it determines "that the judgment was rendered without jurisdiction, or that the sentence

imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. "Review under § 2255 is not an alternative to appellate review for claims that could have been presented on direct appeal but were not." *United States v. Magleby*, 420 F.3d 1136, 1139 (10th Cir. 2005), *cert. denied*, 547 U.S. 1097 (2006). A movant may overcome this procedural bar by showing either of "two well recognized exceptions." *United States v. Cervini*, 379 F.3d 987, 990 (10th Cir. 2004), *cert. denied*, 544 U.S. 904 (2005). First, the movant must show good cause for not raising the issue earlier and actual prejudice to the movant's defense if the issue is not considered. *Id*. Cause may "be established by showing that counsel rendered constitutionally ineffective assistance." *United States v. Wiseman*, 297 F.3d 975, 979 (10th Cir. 2002) (citations omitted). Second, the "'failure to consider the federal claims will result in a fundamental miscarriage of justice.'" *Cervini*, 379 F.3d at 990 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

The court is to hold an evidentiary hearing "unless the [§ 2255] motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *United States v. Galloway*, 56 F.3d 1239, 1240 n. 1 (10th Cir. 1995). The defendant has the burden to

allege facts that would entitle him or her to relief upon proof. *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996). "[T]he allegations must be specific and particularized, not general or conclusory." *Id.* The court may forego an evidentiary hearing if the movant's factual allegations are "contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact." *United States v. Caraway*, 2010 WL 3721689 at *2 (D. Kan. Sept. 15, 2010) (citing *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) ("rejecting ineffective assistance of counsel claims which are merely conclusory in nature and without supporting factual averments")). A hearing is unnecessary here, for the record and the reasons stated hereafter conclusively establish that the defendant is not entitled to relief on his claims.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI; *Kansas v. Ventris*, 129 S.Ct. 1841 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must prove two prongs: first, "that his 'counsel's representation fell below an objective standard of reasonableness,' *Strickland v. Washington*, 466 U.S. 668, 688 (1984)," and second, "'that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' *id*. at 694." *United States v. Taylor*, 454 F.3d 1075, 1079 (10th Cir. 2005). "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland v. Washington*, 466 U.S. at 697.

On the first prong of objective reasonableness, a court may not find a constitutional deficiency unless defense counsel's performance is "completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999), *cert. denied*, 528 U.S. 1167 (2000). Proof must show the counsel's conduct was not "within the wide range of competence demanded of attorneys in criminal cases." *United States v. Blackwell*, 127 F.3d 947, 955 (10th Cir. 1997) (quotation and citations omitted). A court is highly deferential in its review of the attorney's performance. *Strickland*, 466 U.S. at 689. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689; *see United States v. Holder*, 410 F.3d 651, 654 (10th Cir. 2005). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the

alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 281 (1986).

The movant's burden here on the second prong of prejudice is to show that but for counsel's constitutionally ineffective performance there was "a reasonable probability the jury would have had reasonable doubt regarding guilt." *Boyd v. Ward*, 179 F.3d at 914 (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Prejudice is assessed from reviewing "the totality of the evidence, not just the evidence helpful to" the movant. *Boyd v. Ward*, 179 F.3d at 914 (citing *Cooks v. Ward*, 165 F.3d 1283, 1293 (10th Cir. 1998)).

Failure to Review Discovery and Conduct Independent Investigation

After the jury was impaneled and sworn on the morning of April 30, 2009, Corrales's attorney orally moved to dismiss the indictment arguing that Corrales was unfairly prejudiced by the government's late disclosure of Padilla's 2007 conviction. Defense counsel explained that the government had sent him that morning an email containing the judgment and commitment for Padilla's 2007 conviction and that this was "the first . . . [he] had heard of this." (Dk. 122, p. 4). Counsel admitted having received earlier in discovery an NCIC on Padilla that had been completed around the time of Corrales's indictment. This report showed a Department of

Homeland Security case with a reference to drugs. Because he did not receive any additional information from the government, counsel presumed there was no conviction and either the case had been abandoned or a plea had been entered to a different charge. (Dk. 122, p. 6). Padilla's counsel offered that if he had known of this conviction then he would "certainly have spent a lot of time investigating" for its apparent similarity to the instant case and its evidentiary value on this ground. *Id.* at 7-8. Counsel further argued this was reverse 404(b) evidence used to show that Padilla is "a drug dealer that would be pre-disposed to try to trick somebody like Alonso into doing the dirty work once he gets the load over the border, which we know now he does on a regular basis." *Id.* at 17. Counsel opposed a continuance and denied that obtaining additional reports now could substitute for conducting "an entire investigation in Southern California." *Id.* at 18.

The court recessed the jury trial for the balance of the day so that the government could produce all available law enforcement reports on this California conviction. Upon receiving these materials later that day, the court held a chambers conference in the afternoon and denied the defendant's motion but reserved the opportunity to revisit and reverse its ruling should the parties submit additional filings and evidence. (Dk. 82). Corrales's attorney observed that the court's findings may be indicating that he had been "professionally negligent in finding some of that evidence"

himself but that he needed a day to review the reports and to put together what his investigators would have done with these reports. *Id.* at pp. 14-16. The prosecution opposed the continuance request pointing to a recent interview with Padilla about the 2007 distribution offense and its lack of any factual connections to the instant charges. The court denied the defense counsel's request for a longer continuance.

The defense counsel later filed a supplemental memorandum and preserved this issue with timely objections during trial. The trial court reviewed its decision and denied again at the jury instruction conference the defendant's motion to dismiss and subsequently filed a written order explaining its ruling. (Dk. 108). In that order, the court found "no colorable claim of unfair surprise as the defendant had actual knowledge of the federally charged offense back in October of 2007 and apparently did nothing to investigate it independently." *Id.* at p. 4. The court noted that the defense counsel had been able to confront Padilla with the government's full disclosure on this conviction. "What more the defendant could have discovered in his own separate investigation remains a matter of sheer speculation and does not support any substantial claim that material evidence favorable to the defendant has been suppressed." *Id.* at pp. 4-5 (citation omitted).

*Deficient Performance*

A court presumes a counsel's competence, "and the defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (citation omitted). The court evaluates a counsel's performance from the counsel's perspective at the time while keeping "'in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.'" *Id*. (quoting *Strickland*, 466 U.S. at 690). Looking at *Strickland*, the Supreme Court in *Kimmelman* explained a counsel's duty to investigate within the overriding goal of a counsel fulfilling the adversarial testing process:

> Because that testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies, we noted that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 691. But, we observed, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Ibid*.

477 U.S. at 384.

This is not a case where counsel failed to conduct any discovery or to consider defense strategies and investigate them accordingly. This is an instance where defense counsel simply did not follow through in investigating a single reference found on Padilla's NCIC. To be sure, this was an oversight on counsel's part, but not one that is necessarily equated

with being unreasonable and contrary to prevailing professional norms.

Defense counsel explained that the government ran this NCIC report around the time of Corrales's indictment and that the government never supplemented it with other information about the conviction until the morning of trial. Counsel also offered:

> Based on what I usually see in NCICs, if there's nothing there, if there's no conviction noted, then the case was abandoned for some reason, it was pled to something else or there was not an entry made. At least in my experience, probably half the time that's what happens in an NCIC printout.

(Dk. 122, pp. 5-6). So, counsel had reviewed Padilla's NCIC and had concluded there was no conviction from the lack of additional disclosures from the government. These circumstances--in the trial court's judgment-- certainly undermined any claim of unfair surprise, but they do not equate with showing that defense counsel, from his perspective at the time, acted unreasonably in assuming Padilla did not have a drug conviction particularly since the government had not supplemented its related discovery disclosures.

What is more important is that counsel did investigate the Padilla's prior conviction from all the law enforcement reports and interviews fully disclosed by the government.[2] Even though this occurred during the

_____

[2]As the court outlined in its prior order, defense counsel received the following on Padilla's 2007 offense: the officer's arrest report and interview, the officer's 2008 closing report, copies of the plea agreement, criminal judgment, and docket sheet, and a copy of the report made from the agent's

trial, counsel's delayed review of the reports was sufficient to meet the adversarial testing process in this case. Corrales has not carried his burden of showing otherwise. Counsel received most of these reports on April 30 and had adequate time, including an intervening weekend, to prepare for Padilla's cross-examination on May 4. The record in this case is devoid of any evidence to suggest that counsel should have investigated these matters independently for there to have been constitutionally-adequate representation. Corrales does not point to any significant gaps or inconsistencies in government's discovery that would have compelled a reasonable defense attorney to undertake an independent investigation. Counsel's own admission of some negligence in assuming certain things about the NCIC report does not establish a constitutionally-deficient performance. There simply is no basis for finding that defense counsel's failure to investigate these matters independently earlier undermined the adversarial process work in this particular case.

*Prejudice*

In Corrales's opinion, "[b]ut for [his trial counsel's] failures, evidence could have been presented to the jury that supported Corrales's statements to law enforcement that Padilla was responsible for placing the

---

interview of Padilla in April of 2009 about this prior offense. "The defendant possessed all of these items several days before Padilla testified, and they were available for the defendant to use in the cross-examination of Padilla." (Dk. 108, p. 3).

narcotics in the vehicle and that Corrales was nothing more than an unwitting accomplice." (Dk. 133, p. 8). Corrales further speculates that from an independent investigation his trial counsel "would have been able to determine who Padilla was meeting when he was arrested coming across the border in 2007," "where within the vehicle the drugs were held," and "where the drugs were to be taken once dropped off to Padilla's new unwitting accomplice." (Dk. 133, p. 9). The record reveals these arguments to be baseless suppositions.

For the prejudice prong, Corrales must demonstrate that "there is a reasonable probability that, but for counsel's [failure to investigate], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In doing so, Corrales must "'demonstrate with some precision, the content of the testimony they would have given at trial.'" *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990) (quoting *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1014-15 (7th Cir. 1987)); *see also, Martinez v. Tafoya*, 13 Fed. Appx. 873, 877 (10th Cir.7/17/2001). Absent a specific, affirmative showing of exculpatory evidence, the prejudice prong is not met. *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994). Speculation does not suffice for a reasonable probability of a different outcome. *United States v. Boone*, 62 F.3d 323, 327 (10th Cir.), *cert. denied*, 516 U.S. 1014 (1995).

Corrales has not satisfied this burden.  Nor is there anything in the record to suggest that an independent investigation would have uncovered the intended recipient and location for Padilla's 2007 delivery of drugs.  Even assuming these facts were discoverable, these is also nothing to suggest that they would have been relevant and admissible evidence in favor of Corrales let alone that they would have caused a different result. *See United States v. Manriquez-Rodriguez*, 182 F.3d 934, 1999 WL 345505, *5 (10th Cir. 1999) ("To satisfy the prejudice prong of the *Strickland* test for ineffective assistance of counsel, a defendant must specifically show what beneficial evidence an 'adequate' investigation would have produced. Simply speculating that investigation might have resulted in something useful will not suffice.")

Corrales is emphatic that an independent investigation would have yielded evidence to support his defense of being nothing more than an unwitting accomplice for Padilla.  Missing from his argument is any logical connection between what is known about the 2007 offense and what would tend to show that Corrales was unwitting accomplice in 2005.  That Padilla regularly transported drugs from Mexico does not make it any more likely that Padilla tricked or compelled Corrales to transport drugs.  None of these additional facts would have made this assumption any more convincing than what Corrales's trial counsel was able to argue from the 2007 offense itself.

The court finds no showing of prejudice here. This conclusion is all the more forceful when one considers the government's evidence at trial included the defendant's own contradictory, inconsistent, and implausible statements to agents following his arrest. Section 2255 relief is unavailable on Corrales's first argument.

Misinterpretation of Court's Ruling and Failure to Seek Clarification

Trial counsel also represented Corrales on his direct appeal and argued, in part, that the district court had restricted counsel's cross-examination of Padilla in violation of Corrales's constitutional right to confront witnesses. 608 F.3d at 655, 658. In finding no constitutional violation, the Tenth Circuit recounted how defense counsel had argued the door had been opened by the government's direct examination of Padilla and how the trial court had permitted defense counsel to "go into those areas" raised on direct examination. 608 F.3d at 660. The Tenth Circuit noted that "Corrales's attorney did not request further clarification." *Id.* The appellate panel concluded:

> We discern no limitations on the cross-examination of Padilla regarding his 2007 offense. Only two government objections were sustained; and Mr. Corrales does not (and could not) argue that these two rulings impaired his cross-examination.
> Perhaps Mr. Corrales is arguing that he refrained from asking certain questions because of his understanding of the district court's earlier comments. But his brief on appeal does not tell us what additional questions he would have asked, much less what Padilla would have answered. We can hardly determine whether Mr. Corrales was prejudiced without knowing what evidence would have been

18

elicited. *See United States v. Adams*, 271 F.3d 1236, 1241 (10th Cir.2001) (proffer of evidence is required to preserve claim that trial court improperly excluded testimony). Rather than pointing to excluded evidence, he essentially argues that Padilla's 2007 offense implies Mr. Corrales's own innocence, an argument that could have been (and largely was) made to the jury in closing argument.

At oral argument in this court, Mr. Corrales's attorney was asked what evidence had been excluded. He said that he had been precluded from cross-examining Padilla on several matters: (1) Padilla's demeanor when he was stopped at the border in 2007 (apparently to elicit that he was not nervous when he crossed the border, suggesting that he was an experienced smuggler); (2) the similarity in the amount of cocaine discovered, and how it was hidden, on both occasions; (3) his lying at the time of the 2007 arrest; and (4) his being a high-ranking drug dealer (who likely duped Mr. Corrales into transporting drugs). But Padilla was cross-examined on most of these matters, and-particularly in light of what was allowed during cross-examination-it would have been unreasonable for Mr. Corrales's attorney to believe that he could not have asked Padilla about the secret compartment used in 2007 or his rank in a drug organization.

608 F.3d at 662.

Since the Tenth Circuit made these points about defense counsel in denying appellate relief, Mr. Corrales assumes they are meritorious grounds for § 2255 relief. He complains that his trial counsel misinterpreted the trial court's ruling on the scope of cross-examination and then failed to seek clarification of the ruling later. Instead of supporting these § 2255 complaints, the Tenth Circuit's ruling, if anything, closes the door with equal force on them. Just as the Tenth Circuit said that it cannot determine prejudice "without knowing what evidence would have been elicited," this court is similarly in the dark about what evidence the defense counsel would have elicited if he had sought clarification and had asked these additional

questions. *Id.* Of the four claimed areas that defense counsel should have inquired, the Tenth Circuit observed that "Padilla was cross-examined on most of these matters," and so Corrales cannot sustain the performance prong for § 2255 relief. *Id.* As for the secret compartment or the Padilla's rank, Corrales fails to show what evidence would have been admitted and how he was prejudiced by not having it admitted.

The record does not sustain any inferences that cross-examination on these matters would have resulted in testimony favorable to Corrales or would have made it more likely that the jury would have found Corrales to be an unwitting accomplice to Padilla. Defense counsel elicited from Padilla his intentions to transport more drugs across the border and effectively created for the jury the impression of Padilla as a drug trafficker. Corrales fails to explain how answers to these additional questions would have materially changed the jury's impression of Padilla. There is also nothing to suggest that Padilla's answers to these questions would have led the jury to conclude that Corrales had been deceived into transporting the drugs. More evidence of Padilla's knowing connection to drug trafficking activities certainly could have created for the jury the damaging question, if not an inference, of why the defendant knowingly associated for two years with a friend who was a regular and repeated drug trafficker and then borrowed a car from him under circumstances that required him to make a

strange stop on a cross-country trip.  The prejudice prong stands unproven.

Failure to Ask Padilla About Available Vehicles to Loan in 2005

In his attached declaration under penalty of perjury, Corrales declares he told his attorney and/or investigator that Padilla had said he could choose between three vehicles to borrow for the trip, that one of the vehicles was a late-model Ford F150 truck, and that this truck was probably the same one used by Padilla to commit the 2007 offense.  Corrales contends this testimony from Padilla would have established "another link between" the 2005 and 2007 offenses and would have supported Corrales's position of being "another in a long line of unwitting accomplices in Padilla's international drug-smuggling operation."  (Dk. 155-1, p. 7).

This claim is devoid of proof on both prongs--performance and prejudice.  The critical link between the offenses was made through Padilla, and the possibility that Padilla owned a Ford F-150 truck in 2005 does not tend to prove any fact material to Corrales's innocence or guilt for that offense.  Nor as a matter of trial strategy would defense counsel reasonably expect such a question to elicit any favorable testimony from Padilla in light of what he said on direct examination about the 2005 offense.  Instead, such questioning would have created yet another risky twist in what Corrales said in his post-arrest interview.  At trial, it was elicited that Corrales told Agent Spahn that he tried to purchase the Honda Accord but Padilla replied that he

could just borrow it and then make a stop in North Carolina for Padilla. (Dk. 123, pp. 183-84). That Padilla may have owned in 2005 the same F-150 truck that he used to commit the 2007 offense simply does not offer any link to Corrales's defense that he was an unwitting accomplice in 2005. There is nothing of record creating any reasonable probability the jury would have had reasonable doubt regarding Corrales's guilt if it had learned that Padilla owned the F-150 truck in 2005 and had offered to lend it to Corrales then.

As now required by Rule 11 of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such a certificate "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the applicant to demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted). The above rulings are not of a kind or quality that a reasonable jurist could debate whether Corrales's arguments should have been resolved differently or whether the issues are worthy of more consideration. The court will not issue a certificate of appealability for this order.

IT IS THEREFORE ORDERED that Corrales's original motion for relief under 28 U.S.C. § 2255 (Dk. 132), his amended motion for relief under § 2255 (Dk. 155), his renewed motion for appointment of counsel (Dk. 164), and his motion for leave to exceed the page limitation for reply briefs (Dk. 165) are denied;

IT IS FURTHER ORDERED that a certificate of appealability is denied.

Dated this 7th day of December, 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge